Universal C. I. T. Credit Corp. v. Ingel.

━━━━━━

UNIVERSAL C. I. T. CREDIT CORP. *vs.* ALBERT T. INGEL & another.

Worcester.  November 7, 1963, January 17, 1964. — March 3, 1964.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Bills and Notes,* Negotiability, Holder in due course.  *Evidence,* Prima facie evidence.  *Notice.*

A promissory note given by the maker in payment for property improvements by the payee and a completion certificate signed by the maker were not "part of the same instrument" merely because the note and certificate had been "together" when given to the payee by one who had drafted the note and subsequently became holder thereof, and the note was not nonnegotiable under G. L. c. 106, § 3–104 (1) (b), by reason of an additional obligation upon the maker in the certificate; nor by reason of any variance between the terms of the note and the terms of the improvement contract between the payee and the maker, to which it did not appear the note was subject; nor by reason of a clause in the note whereby the holder of the note agreed to obtain life insurance covering the maker.  [123–124]

The provision of G. L. c. 106, § 3–104 (1) (b), that a promissory note to be negotiable must contain "no other promise" than the unconditional promise to pay a sum certain in money refers only to promises by the maker. [124]

A promise by the maker of a note to pay "interest after maturity at the highest lawful rate" did not render the note nonnegotiable for failure to state a sum certain as required by G. L. c. 106, § 3–104 (1) (b), and such interest was at the rate indicated by c. 107, § 3. [124]

In an action against the maker of a promissory note in which July had been substituted for June as the month in which monthly instalments should begin to be paid, where it appeared that the defendant had made a part payment on the note and that the sum still owing thereon was not in dispute, the substitution did not constitute a material alteration of the note. [124]

In an action by an assignee of the payee of a promissory note against the maker, where the defendant's answer denied that the plaintiff was "a holder in due course" and it appeared that the action had been transferred to the District Court by the Superior Court pursuant to G. L. c. 231, § 102C, a finding for the plaintiff by the District Court judge became, upon retransfer of the action for trial in the Superior Court, prima facie evidence, rebuttable by the defendant, that the plaintiff had taken the note for value and without notice. [125]

At the trial of an action by an assignee of the payee of a promissory note given for property improvements against the maker, it was proper to exclude evidence that the plaintiff and the payee had worked together on various aspects of financing the improvements, that the plaintiff had learned of complaints by previous customers of the payee, and that the plaintiff became aware after it had purchased the note of alleged fraud by the payee: such evidence would not have shown that within G. L. c. 106, § 1–201 (25) the plaintiff had "reason to know" or "notice" of alleged fraud by the payee when the plaintiff took the note or that the plaintiff was not a holder in due course under § 3–302 (1). [125]

CONTRACT. Writ in the Municipal Court of the City of Boston dated July 17, 1961.

Following transfer to the District Court of Fitchburg, removal to the Superior Court, transfer to and trial in the District Court of Fitchburg, and retransfer to the Superior Court, the action was tried before *Meagher, J.*

*Henry G. Bowen* for the defendants.

*Harold Lavien* for the plaintiff.

*Edward W. Brooke,* Attorney General, and The Massachusetts Commissioners on Uniform State Laws, amici curiae, submitted a brief.

SPIEGEL, J. This is an action of contract on a promissory note by the assignee of the payee against the makers.

Universal C. I. T. Credit Corp. *v.* Ingel.

The case was first tried in the District Court of Fitchburg, to which it had been remanded by the Superior Court. There was a finding for the plaintiff in the sum of $1,630.12. At the request of the defendants, the case was retransferred to the Superior Court for trial by jury. Upon conclusion of the evidence the court allowed a motion by the plaintiff for a directed verdict to which the defendants excepted. They also excepted to the exclusion of certain evidence.

At the trial the plaintiff introduced in evidence the note,[1]

[1]                  "This Is A Negotiable Promissory Note

$1890.00                                          Fitchburg, Mass., 6/22, 1959

(Total Amount of Note)                    (City, State)      (Date)

I/WE JOINTLY AND SEVERALLY PROMISE TO PAY TO ALLIED ALUMINUM ASSOCI-ATES, INC. OR ORDER THE SUM OF EIGHTEEN HUNDRED NINETY DOLLARS IN 60 SUCCESSIVE MONTHLY INSTALMENTS OF $31.50 EACH, EXCEPT THAT THE FINAL INSTALMENT SHALL BE THE BALANCE THEN DUE ON THIS NOTE. COMMENCING THE 25 DAY OF JULY, 1959, AND THE SAME DATE OF EACH MONTH THEREAFTER UNTIL PAID, with interest after maturity at the highest lawful rate, and a reasonable sum (15% if permitted by law) as attorney's fees, if this note is placed in the hands of any attorney for collection after maturity. Upon non-payment of any instalment at its maturity, all remaining instalments shall at the option of the holder become due and payable forthwith. Charges for handling late payments, of 5¢ per $1 (maximum $5), are payable on any instalment more than 10 days in arrears. . . .

Notice of Proposed Credit Life Insurance: Group credit life insurance will be obtained by the holder of this instrument, without additional charge to customer, subject to acceptance by the insurer, Old Republic Life Insurance Company, Chicago, Illinois. Such insurance will cover only the individual designated and signing below as the person to be insured (who must be an officer if customer is a corporation, a partner if partnership), except that no individual 65 years of age or older on the date the indebtedness is incurred will be eligible for such insurance. Such insurance will become effective, upon acceptance by the insurer, as of the date the indebtedness is incurred, and will terminate when the indebtedness terminates or upon such default or other event as terminates the insurance under the terms of the group policy. The amount of such insurance will be equal to the amount of customer's indebtedness hereunder at any time but not to exceed $10,000; proceeds will be applicable to reduction or discharge of the indebtedness. The provisions of this paragraph are subject to the terms of the group policy and the certificate to be issued.

PLEASE PRINT MAILING ADDRESS

Customer acknowledges receipt of a completed copy of this promissory note, including above Notice.

ALBERT T. INGEL
Customer (Person on whose life group credit life insurance will be obtained, if applicable.)

DORA INGEL
(Additional Customer, if any)

ORIGINAL"

a completion certificate signed by the defendants, and the District Court's finding for the plaintiff. The defendants admitted the authenticity of the signatures on the note and the completion certificate. As a witness for the defendants, one Charles D. Fahey testified that he was the plaintiff's Boston branch manager at the time the defendants' note was purchased, and that the plaintiff purchases instalment contracts regarding automobile and property improvement purchases. He described the procedures by which purchases of commercial paper are arranged by the plaintiff; these procedures included a credit check on the "customer," i.e., the maker of the note which the plaintiff is planning to purchase. The defendants attempted to introduce through Fahey a credit report obtained by the plaintiff on Allied Aluminum Associates, Inc. (Allied), the payee of the note. The defendants excepted to the exclusion of this evidence. They offered to prove that the excluded report, which was dated "3–31–59," contained the following statement: "The subject firm is engaged in the sale of storm windows, doors, roofing, siding, and bathroom and kitchen remodeling work. The firm engages a crew of commission salesmen and it is reported they have been doing a good volume of business. They are reported to employ high pressure sales methods for the most part. They have done considerable advertising in newspapers, on radio, and have done soliciting by telephone. They have been criticized for their advertising methods, and have been accused of using bait advertising, and using false and misleading statements. The Boston Better Business Bureau has had numerous complaints regarding their advertising methods, and have reported same to the Attorney General. *FHA has had no complaints other than report of this from Better Business Bureau and have warned the firm to stop their practice.*"

The defendants excepted to the exclusion of testimony by the defendant Dora Ingel concerning certain of her negotiations with Allied. An offer of proof was made which indicates that this testimony might have been evidence of fraud or breach of warranty on the part of Allied. They also ex-

Universal C. I. T. Credit Corp. *v.* Ingel.

cepted to the exclusion of a letter[2] from the plaintiff to the defendant Albert.

I.

The defendants contend that the note was nonnegotiable as a matter of law and, therefore, any defence which could be raised against Allied may also be raised against the plaintiff. They argue that the note contained a promise other than the promise to pay, failed to state a sum certain, and had been materially altered.

It appears that the note was a form note drafted by the plaintiff. The meaning of Fahey's general testimony that the note and the completion certificate were "together" when given by the plaintiff to Allied is unclear. However, we see nothing in this testimony to justify the inference urged upon us by the defendants that in this case the note and completion certificate were "part of the same instrument" and that an additional obligation in the completion certificate rendered the note nonnegotiable under G. L. c. 106, § 3–104 (1) (b).[3] Similarly, we are not concerned

---

[2]                                                        "October 27, 1959
                                                              Identification
Mr. Albert Ingel                                                   'B'
115 Belmont
Fitchburg, Massachusetts
            Re: 200–12–51767
Dear Sir:

We are sorry to learn that the Aluminum Siding on which we hold your promissory note, is giving you cause for complaint. Our part in the transactions consisted of extending the credit which you desired, and arranging to accept prepayment of the advance on terms convenient to you. We did not perform any of the work, and any questions in connection with materials and workmanship should be adjusted with the dealer from whom you made your purchase. Therefore, we have passed your report along to Allied Aluminum and we are confident that everything reasonably possible will be done to correct any faulty conditions which may exist.

In the meantime, we shall appreciate your continuing to make payments on your note as they fall due so that your account may be kept in current condition.

                          Very truly yours,
                          UNIVERSAL C.I.T. CREDIT CORPORATION
                          C. KEVENY
                          Collection Man''

[3] "Any writing to be a negotiable instrument within this Article must . . . contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article."

with any variance between the written contract (entered into by Allied and the defendants) and the note, since there is nothing in the note to indicate that it is subject to the terms of the contract. We are equally satisfied that the insurance clause in the note does not affect negotiability under § 3–104 (1) (b) since it is clear that the "no other promise" provision refers only to promises by the maker.

The provision in the note for "interest after maturity at the highest lawful" rate does not render the note nonnegotiable for failure to state a sum certain as required by § 3–104 (1) (b). We are of opinion that after maturity the interest rate is that indicated in G. L. c. 107, § 3,[4] since in this case there is no agreement in writing for any other rate after default. This being the case, we do not treat this note differently from one payable "with interest." The latter note would clearly be negotiable under G. L. c. 106, § 3–118 (d).[5]

The note in question provides that payment shall be made "commencing the 25 day of July, 1959." It appears that there is an alteration on the face of the note in that "July" was substituted for "June," the "ly" in the former word being written over the "ne" in the latter. The alteration has no effect in this case, where the defendants admitted that they had paid a particular sum on the note and where the sum still owing (assuming the note to be enforceable on its face) is not in dispute. See *Mindell* v. *Goldman*, 309 Mass. 472, 473–474.

We thus conclude that the note in question is a negotiable instrument.[6]

---

[4] "If there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of six dollars on each hundred for a year, but, except as provided in sections seventy-eight, ninety, ninety-two, ninety-six and one hundred of chapter one hundred and forty, it shall be lawful to pay, reserve or contract for any rate of interest or discount. No greater rate than that before mentioned shall be recovered in a suit unless the agreement to pay it is in writing."

[5] "Unless otherwise specified a provision for interest means interest at the judgment rate at the place of payment from the date of the instrument, or if it is undated from the date of issue."

[6] By G. L. c. 255, § 12C, inserted by St. 1961, c. 595, certain notes given in connection with the sale of consumer goods were made nonnegotiable.

## II.

The finding of the District Court which the plaintiff offered in evidence is, under G. L. c. 231, § 102C, prima facie evidence upon such matters as are put in issue by the pleading at the trial in the Superior Court. *Lubell* v. *First Natl. Stores, Inc.* 342 Mass. 161, 164. The defendants' answer denies that the plaintiff is "a holder in due course" of the note on which the action is brought; accordingly, this must be regarded as a matter "put in issue by the pleadings." We are satisfied that the finding of the District Court was prima facie evidence that the plaintiff took the note for value and without notice, and notwithstanding the provisions of G. L. c. 106, § 3–307 (3),[7] the burden was on the defendants to rebut the plaintiff's prima facie case. See *Cook* v. *Farm Serv. Stores, Inc.* 301 Mass. 564, 566.

## III.

The trial judge correctly excluded the evidence offered by the defendants to show that the plaintiff and Allied had worked together on various aspects of the financing and that the plaintiff was aware of complaints against Allied by previous customers. We are of opinion that there was nothing in this evidence by which the plaintiff had "reason to know" of any fraud.[8] The letter of October 27, 1959, from the plaintiff to the defendant Albert was also properly excluded; it is immaterial that the plaintiff may have found out about Allied's allegedly fraudulent representations after the note had been purchased.

*Exceptions overruled.*

---

[7] "After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course."

[8] G. L. c. 106, § 3–302 (1) states: "A holder in due course is a holder who takes the instrument . . . (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." "Notice" is defined in G. L. c. 106, § 1–201 (25) as follows: "A person has 'notice' of a fact when (a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists."