**CALVERT CREDIT CORPORATION,**
Appellant,

v.

**Lawrence E. WILLIAMS and Vivian
L. Williams, Appellees.**

**CALVERT CREDIT CORPORATION,**
Appellant,

v.

**Ida P. BARNES, Appellee.**

**CALVERT CREDIT CORPORATION,**
Appellant,

v.

**John P. EDWARDS and Mary Edwards,
Appellees.**

**CALVERT CREDIT CORPORATION,**
Appellant,

v.

**Jerushia PEGUES, Appellee.**

**Nos. 4146–4149.**

District of Columbia Court of Appeals.

Argued April 1, 1968.

Decided July 24, 1968.

---

A. Fred Freedman, Washington, D. C., with whom Joseph Luria, Washington, D. C., was on the brief, for appellant.

Nelson Deckelbaum, Washington, D. C., with whom Ira C. Wolpert, Washington, D. C., was on the brief, for appellees.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

MYERS, Associate Judge.

A jury returned a special verdict finding that appellant, plaintiff below, was not a holder in due course of promissory notes signed by appellees.[1] The only question on appeal is whether the record con-

---

1. The transactions in the present appeals were completed in 1964, before the Uniform Commercial Code went into effect in the District of Columbia. cf. D.C. Code, 1967, Title 28.

tains sufficient evidentiary basis for that finding.

Appellees in each of these appeals purchased color televisions from a group calling itself Interstate Marketing Consultants, Inc.,[2] and signed promissory notes and conditional sales contracts obligating each to pay the purchase price plus a substantial financing charge. In order to induce appellees to buy, Interstate used a promotional scheme known as the "Referral Plan," whereby Interstate agreed to pay each appellee $450 for a list of twenty people Interstate could contact for the purpose of interesting them in purchasing a television. Each time a set was sold to some one on the list, the person supplying the list was to receive an additional $50. These agreements were not contained in the conditional sales contract but in separate documents executed simultaneously with the note and sales contract. Appellees supplied lists to Interstate, but none ever received either $450 for his list or the $50 promised for each resulting sale.

When the televisions were delivered, appellees found that they were defective. One appellee received the wrong kind of television, and it later developed that after she had signed the sales contract, the document had been altered.[3] None of the televisions was in proper working order. Some sets had parts missing and some were scarred and scratched. Each appellee complained first to Interstate and later to appellant that the terms of the sales contract had not been met, but none of the appellees ever received satisfaction.

Interstate sold the promissory notes and the conditional sales contracts to Reli-able Credit Corporation, which in turn assigned the notes to appellant for collection. When appellees defaulted on their payments, appellant instituted the present actions alleging it was a holder in due course.[4]

At trial appellees introduced evidence tending to show that appellant was not a holder in due course. They proved that before Interstate ever attempted to sell any televisions it sought and received appellant's approval of the conditional sales contracts and the notes it intended to use. Appellant also approved in advance the form of the "Referral Plan" contract, making certain it contained a clause limiting the buyer to remedies against Interstate in the event of a breach of that contract. Appellant approved in advance the financing charges to be assessed and, before buying a note, approved each individual customer. There was evidence that even after a customer had signed a contract, if appellant did not approve him, no television was ever delivered. It was appellant, and not Interstate, which procured the consumer life insurance securing each note and obtained the television repair contracts that the sales contract required. Furthermore, appellant's witness testified that before appellant bought a note one of its representatives would call the maker to be sure he had received the television ordered and to make it clear that appellant did not "condone" the "Referral Plan."

It is true that all this evidence is circumstantial to support the jury's finding that appellant was not a holder in due course, and concededly some of the things appellant did are consistent with good business practices. But in a

2. Interstate was never licensed to do business in the District of Columbia and its principal operators have disappeared.

3. See Bob Wilson, Inc. v. Swann, D.C. Mun.App., 168 A.2d 198 (1961).

4. For the purposes of these cases, Reliable and Calvert have exactly the same rights:

(1) Calvert, as assignee for collection, derives all its rights from Reliable; (2) Reliable and Calvert have the same president, some of the same employees, and share the same offices. Whatever knowledge can be imputed to Reliable can also be imputed to Calvert.

fact situation like the present one it is usually necessary for the party claiming that a holder is not a holder in due course to rely on circumstantial evidence. Rarely will the purchaser of a note admit that he did not buy the paper in good faith or that he knew of a defense available to the maker. However, from the record before us, we are of the opinion that the jury could reasonably conclude that appellant was not a holder in due course. The fact that appellant knew the "Referral Plan" was being used and telephoned the maker of each note to say it did not "condone" the use of this scheme could have indicated to the jury that appellant had noticed that Interstate's sales practices could give rise to defenses which could be asserted by customers against Interstate. Furthermore, from the record it is evident that appellant was the moving force behind Interstate. By appellant's own admission, Interstate could not have begun to operate without first being assured it could sell the notes it was to receive. Appellant prearranged finance charges and approved the "Referral Plan." It also approved each customer. Without that approval, even a customer who had signed a sales contract was unable to get a television from Interstate. The jury could properly have concluded that appellant was so intimately involved in every step of the sales process that Interstate was, in fact, appellant's agent. If that be so, Interstate's knowledge of the fraudulent sales techniques could properly be imputed to appellant.[5] There was a sufficient evidentiary basis for the jury to reach this conclusion and the question was properly submitted.[6]

■ The concept of a holder in due course is designed to facilitate the negotiation of commercial paper and many legitimate businesses rely upon it for financing. But the doctrine was never intended to allow the holder of a note to feign ignorance of the circumstances surrounding the execution of a note in order to insulate himself from responsibility for fraudulent sales practices which he knows are being used.

■ After the jury returned its verdict, appellant moved to amend the pleadings and to sue upon the conditional sales contract instead of the note. It wanted to rely upon a waiver provision in the sales contract. The trial court properly denied this motion. Weatherall Corp. v. Ricks, D.C.App., 205 A.2d 311 (1964).

Affirmed.

5. United Securities Corp. v. Franklin, D.C. Mun.App., 180 A.2d 505 (1962); Commercial Credit Co. v. Childs, 199 Ark. 1073, 137 S.W.2d 260, 128 A.L.R. 726 (1940).

6. Zier v. Eastern Acceptance Corp., D.C. Mun.App., 61 A.2d 106 (1948).