No. 47,845

The Kaw Valley State Bank and Trust Company, *Appellant,* v. John H. Riddle d/b/a Riddle Contracting Company, and Planters State Bank and Trust Company, a Banking Corporation, *Appellees.*

(549 P. 2d 927)

Opinion filed May 8, 1976. 

*Jan W. Leuenberger*, of Glenn, Cornish & Leuenberger, of Topeka, argued the cause, and *John W. Huey*, of the same firm, was with him on the brief for the appellant.

*Ralph E. Skoog*, of Skoog & Reed, of Topeka, argued the cause and was on the brief for John H. Riddle d/b/a Riddle Contracting Company, appellee.

*W. Dean Owens*, of Hampton, Royce, Engleman & Nelson, of Salina, argued the cause and was on the brief for Planters State Bank and Trust Company, a Banking Corporation, appellee.

The opinion of the court was delivered by

FROMME, J.: This action was brought by The Kaw Valley State Bank and Trust Company (hereinafter referred to as Kaw Valley) to recover judgment against John H. Riddle d/b/a Riddle Contracting Company (hereafter referred to as Riddle) on two notes and to determine the priority of conflicting security agreements. The two notes were covered by separate security agreements and were given to purchase construction equipment. The Planters State Bank and Trust Company (hereafter referred to as Planters) held a note and security interest on the same and other construction equipment acquired by Riddle. Kaw Valley had acquired the two notes and the security agreements by assignment from Co-Mac, Inc. (hereafter referred to as Co-Mac), a dealer, from whom Riddle purchased the construction equipment.

In a trial to the court Kaw Valley was found not to be a holder in due course of one of the notes. Its claim on said note, totaling $21,904.64, was successfully defended on the grounds of failure of consideration. It was stipulated at the trial that none of the construction equipment for which the note was given had ever been delivered by Co-Mac. Kaw Valley has appealed.

The facts underlying this controversy are lengthy and complex but they must be set forth to adequately understand the issues on appeal. The parties submitted the case to the trial court upon a written stipulation of facts supplemented by testimony and ex-

hibits. The following facts are taken from either the stipulation or the facts found by the trial court.

Prior to the transactions in question Riddle had purchased construction equipment and machinery from the dealer, Co-Mac. A number of these purchases had been on credit and discounted to Kaw Valley by Co-Mac. Including the Riddle transactions, Kaw Valley had purchased over 250 notes and security agreements from Co-Mac during the prior ten year period. All were guaranteed by Co-Mac and by its president personally.

In May, 1971, Riddle negotiated for the purchase of a model 6-c Caterpillar tractor, a dozer and a used 944 Caterpillar wheel tractor with a two yard bucket. Riddle was advised that this machinery could be delivered but it would first be necessary for Co-Mac to have a signed note and security agreement to complete the transaction. An installment note, security agreement and acceptance of delivery of the machinery was mailed to Riddle. These were signed and returned to Co-Mac. Ten days later, the machinery not having been delivered, Riddle called Co-Mac and inquired about purchasing a D-8 Caterpillar and a #80 Caterpillar scraper in place of the first machinery ordered. Co-Mac agreed to destroy the May 11, 1971 papers and sell this larger machinery to Riddle in place of that previously ordered.

The sale of this substitute machinery was completed and the machinery was delivered after the execution of an additional note and security agreement. However, the May 11, 1971 papers were not destroyed. The note had been discounted and assigned to Kaw Valley prior to the sale of the substitute machinery. Thereafter Co-Mac, who was in financial trouble, made regular payments on the first note to Kaw Valley. The note was thus kept current by Co-Mac and Riddle had no knowledge of the continued existence of that note. The 6-c Caterpillar tractor, dozer and the used 944 Caterpillar wheel tractor were never delivered to Riddle. Riddle received no consideration for the May 11, 1971 note and no lien attached under the security agreement because the machinery never came into possession of Riddle. (See K. S. A. 84-9-204.) The debtor never had rights in any of the collateral.

On February 24, 1972, representatives of Riddle, Co-Mac and Kaw Valley met for the purpose of consolidating the indebtedness of Riddle on machinery notes held by Kaw Valley and guaranteed by Co-Mac. Riddle was behind in some of his payments and wanted

to consolidate the notes and reduce his monthly payments to $4,500.00. Kaw Valley disclosed eight past due machinery notes, each representing separate purchase transactions by Riddle. Riddle objected to one of these notes dated July 16, 1971, because the machinery purchased under this particular transaction had been previously returned to Co-Mac.

It was agreed by Kaw Valley that Riddle did not owe for this machinery because of the previous settlement between Co-Mac and Riddle. Kaw Valley cancelled the $5,000.00 balance shown to be due from Riddle.

Thereupon a renewal note and security agreement for $44,557.70 dated February 24, 1972, was drawn consolidating and renewing the seven remaining notes. Riddle then asked Kaw Valley if this was all that it owed the bank and he was assured that it was. The renewal note was then executed by Riddle.

It was not until March 12, 1972, that Riddle was advised by Kaw Valley that it held the note and security agreement dated May 11, 1971, which Riddle believed had been destroyed by Co-Mac. This was within a week after a receiver had been appointed to take over Co-Mac's business affairs. Riddle explained the machinery had never been delivered and Co-Mac promised to destroy the papers. No demand for payment of the May 11, 1971 note was made on Riddle until this action was filed.

Prior to the time this action was filed, Riddle executed a note and granted a security agreement in all of its machinery and equipment to Planters. This included the machinery covered in the previous consolidation transaction of February 24, 1972, with Kaw Valley and Co-Mac.

Subsequently Kaw Valley obtained possession of the machinery covered by the February 24 transaction by court order. Thereupon by agreement in writing between Kaw Valley, Planters and Riddle an immediate sale of the collateral covered in the February 24 transaction was held. By the terms of this agreement the first $22,200.00 in proceeds was to be paid to Kaw Valley in full satisfaction of the note of February 24, 1972. The money received from the sale in excess of this amount was to be paid to the Merchants National Bank to hold as escrow agent, awaiting a determination of entitlement by the court.

At the time of the trial the $22,200.00 had been received by Kaw Valley and the balance of the proceeds of the agreed sale amounting to $25,371.15 was in the hands of the escrow agent.

In the court's memorandum of decision filed November 19, 1974, the court found:

"That the proceeds remaining in plaintiff's possession from the agreed equipment sale are $25,371.15. The plaintiff claims $21,904.64 of same is due on the transaction of May 11, 1971. The parties agree that the excess of $3,466.51 should be paid to defendant Planters State Bank to apply on its August 28, 1972 claim;"

On December 20, 1974, the court entered the following pay-out order:

"To The Clerk of The District Court:

"Now on this 20th day of December 1974, you are ordered to pay to The Planters State Bank and Trust Company the sum of $3,466.51 now in your hands, having been paid by the Kaw Valley State Bank and Trust Company, pursuant to the Journal Entry of Judgment entered herein on November 19, 1974."

Although it does not appear who initiated the order, the $3,466.51 was paid to and accepted by Planters leaving the disputed proceeds of the sale ($21,904.64) in the hands of either the escrow agent or the court.

This leads us to the first question raised on appeal, a challenge to the jurisdiction of this court to entertain the appeal. The contention is that the appellant acquiesced in the lower court's judgment by arranging to have the $3,466.51 paid into the clerk's office in accordance with the decision of the court.

In this case the proceeds of the sale of machinery formerly owned by Riddle was being held in escrow pending a decision of the court. Kaw Valley, appellant, did not pay the amount into court from its own funds. Previously $22,200.00 had been paid from the sale proceeds to Kaw Valley by agreement of the parties and no question arises concerning this payment. The parties had also agreed that Planters was entitled to the amount of the escrow proceeds in excess of the sum in question. The only sum in question was $21,904.64.

When a judgment or decree of the trial court relates to two or more distinct matters or demands, acquiescence as to one of such matters or demands will not bar an appeal as to the others which remain in dispute, except for payment of costs. In *Wollard v. Peterson*, 145 Kan. 631, 66 P. 2d 375, we hold:

"Where a judgment rendered against the defendant consists of two or more separate and distinct parts, the acquiescence in and the payment of one of those separate parts by the defendant, except costs, will not ordinarily

constitute an estoppel or waiver of his right to appeal as to other separate parts." (Syl. ¶ 1.)

(See also 4 C. J. S., Appeal and Error, § 212, p. 621.)

The judgment entered by the trial court consisted of two separate matters, and although both were decided adversely to Kaw Valley, the only matter disputed by Kaw Valley concerned its claim to the proceeds of the sale of machinery based upon the May 11, 1971 note upon which the sum due was $21,904.64. Release of the additional $3,466.51 to which no claim was ever made by Kaw Valley did not amount to acquiescence in the judgment or prevent this appeal.

We turn to the substantive issues.

The primary point on appeal questions the holding of the trial court that Kaw Valley was not a holder in due course of the note and security agreement dated May 11, 1971.

K. S. A. 84-3-306 provides that unless a holder of an instrument is a holder in due course he takes the instrument subject to the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery or delivery for a special purpose. It was undisputed in this case that Riddle received no consideration after executing the note. The machinery was never delivered and he was assured by Co-Mac that the papers would be destroyed. The parties so stipulated. If Kaw Valley was not a holder in due course the proven defense was a bar to recovery by Kaw Valley.

K. S. A. 84-3-302 states that a holder in due course is a holder who takes the instrument (1) for value, (2) in good faith and (3) without notice of any defense against it. It was not disputed and the court found that Kaw Valley took the note for value so the first requirement was satisfied. The other requirements were subject to dispute. The trial court concluded:

"Kaw Valley State Bank and Trust Company is not a holder in due course of the note and security agreement, dated May 11, 1971 for the reason that it did not establish in all respects that it took said instruments in good faith and without notice of any defense against or claimed to it on the part of John H. Riddle, and Kaw Valley State Bank and Trust Company therefor took said instruments subject to the defense of failure of consideration. [Citations omitted.]"

So we are confronted with the question of what is required for a holder to take an instrument "in good faith" and "without notice of defense". We will consider the two parts of the question in the order mentioned.

"Good faith" is defined in K. S. A. 84-1-201 (19) as "honesty in fact in the conduct or transaction concerned." The first draft of the Uniform Commercial Code (U. C. C.) as proposed required not only that the actions of a holder be honest in fact but in addition it required the actions to conform to *reasonable commercial standards*. This would have permitted the courts to inquire as to whether a particular commercial standard was in fact reasonable. (See Uniform Commercial Code, Proposed Final Draft [1950], § 1-201, 18, p. 30.) However, when the final draft was approved the test of reasonable commercial standards was excised thus indicating that a more rigid standard must be applied for determining "good faith". (See White and Summers, Uniform Commercial Code [1972], § 14-6, pp. 471, 472.)

From the history of the Uniform Commercial Code it would appear that "good faith" requires no actual knowledge of or participation in any material infirmity in the original transaction.

The second part of our question concerns the requirements of the U. C. C. that a holder in due course take the instrument without notice of any defense to the instrument. K. S. A. 84-1-201 (25) provides:

"A person has 'notice' of a fact when
"(*a*) he has actual knowledge of it; or
"(*b*) he has received a notice or notification of it; or
"(*c*) from all the facts and circumstances known to him at the time in question he has reason to know that it exists. A person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it. 'Discover' or 'learn' or a word or phrase of similar import refers to knowledge rather than to reason to know. The time and circumstances under which a notice or notification may cease to be effective are not determined by this act."

As is apparent from reading the above statute the standard enunciated is not limited to the rigid standard of actual knowledge of the defense. Reason to know appears to be premised on the use of reasonable commercial practices. (See 2 Bender's U. C. C. Service, Hart and Willier, Commercial Paper, § 11.05 [2] [1972]; *Citizens Bank of Booneville v. National Bank of Commerce*, 334 F. 2d 257 [10th Cir. 1964]; and *Universal C. I. T. Credit Corp. v. Ingel*, 347 Mass. 119, 196 N. E. 2d 847.) Since "good faith" and "no notice of defense" are both required of a holder to claim the status of a holder in due course it would appear that the two standards are not in conflict even though the standards of conduct may be different.

There is little or no evidence in the present case to indicate that

Kaw Valley acted dishonestly or "not in good faith" when it purchased the note of May 11, 1971. However, as to "notice of defense" the court found from all the facts and circumstances known to Kaw Valley at the time in question it had reason to know a defense existed. The court found:

"During the period 1960 to May, 1971, plaintiff purchased from Co-Mac over 250 notes and secured transactions and held at any given time between $100,000.00 and $250,000.00 of such obligations. All of which were guaranteed by Co-Mac and personally guaranteed by D. J. Wickern, its president. Conant Wait personally handled most if not all of such transactions for plaintiff. Mr. Wait was aware that Co-Mac was making warranties and representation as to fitness to some purchasers of new and used equipment. Mr. Wait further knew that some transactions were in fact not as they would appear to be in that the money from Kaw Valley would be used by Co-Mac to buy the equipment that was the subject matter of the sale. Further, that delivery to the customer of said purchased equipment was sometimes delayed 60 to 90 days for repairing and/or overhauling of same. The plaintiff obviously on many transactions was relying on Co-Mac to insure payment of the obligations and contacted Co-Mac to collect delinquent payments. Some transactions involved delivery of coupon books to Co-Mac rather than the debtor so Co-Mac could bill service and parts charges along with the secured debt. Co-Mac collected payments directly from debtors in various transactions and paid plaintiff. Plaintiff did not concern itself with known irregularities in the transactions as it clearly was relying on Co-Mac;

"The coupon book on the May 11, 1971 transaction was not sent to defendant Riddle; no payments on same were made by defendant Riddle; the payments were made by Co-Mac until January 25, 1972; prior to early March, 1972, defendant Riddle did not know plaintiff had the May 11, 1971 secured transaction; knowledge of said transaction came to defendant Riddle on March 12, 1972 when Mr. Wait contacted defendant Riddle's manager; that Co-Mac had shortly before been placed in receivership; that no demand for any payment on said transaction was made by plaintiff to defendant Riddle until September 1972."

To further support its holding that Kaw Valley had reason to know that the defense existed the court found that when Kaw Valley, Co-Mac and Riddle met on February 24, 1972, to consolidate all of Riddle's past due notes Kaw Valley recognized Co-Mac's authority to act for it. Co-Mac had accepted return of the machinery on one of the eight transactions and Kaw Valley recognized its authority as their agent to do so and cancelled the $5,000.00 balance remaining due on the note held by the bank.

The cases dealing with the question of "reason to know a defense exists" seem to fall into four categories.

The first includes those cases where it is established the holder had information from the transferor or the obligor which disclosed

the existence of a defense. In those cases it is clear if the holder takes an instrument having received prior or contemporaneous notice of a defense he is not a holder in due course. (*Billingsley v. Mackay*, 382 F. 2d 290 [5th Cir. 1967].) Our present case does not fall in that category for there is no evidence that Co-Mac or Riddle informed Kaw Valley that the machinery had not been delivered when the note was negotiated.

The second group of cases are those in which the defense appears in an accompanying document delivered to the holder with the note. For example, when a security agreement is executed concurrently with a note evidencing an indebtedness incurred for machinery to be delivered in the future. In such case the instrument may under certain circumstances disclose a defense to the note, such as nondelivery of the machinery purchased. (See also *Commerce Trust Company v. Denson*, 437 S. W. 2d 94 [Mo. App. 1968], and *HIMC Investment Co. v. Siciliano*, 103 N. J. Super. 27, 246 A. 2d 502, for other examples.) Our present case does not fall in this category because Riddle had signed a written delivery acceptance which was handed to Kaw Valley along with the note and security agreement.

A third group of cases are those in which information appears in the written instrument indicating the existence of a defense, such as when the note on its face shows that the due date has passed or the note bears visible evidence of alteration and forgery or the note is clearly incomplete. (See *E. F. Corporation v. Smith*, 496 F. 2d 826 [10th Cir. 1974]; *Srochi v. Kamensky*, 118 Ga. App. 182, 162 S. E. 2d 889; and *Winter & Hirsch, Inc. v. Passarelli*, 122 Ill. App. 2d 372, 259 N. E. 2d 312.) In our present case the instrument assigned bore nothing unusual on its face and appeared complete and proper in all respects.

In the fourth category of cases it has been held that the holder of a negotiable instrument may be prevented from assuming holder in due course status because of knowledge of the business practices of his transferor or when he is so closely aligned with the transferor that transferor may be considered an agent of the holder and the transferee is charged with the actions and knowledge of the transferor.

Under our former negotiable instruments law containing provisions similar to the U. C. C. this court refused to accord holder in due course status to a machinery company receiving notes from one of its dealers because of its knowledge of the business practices

of the dealer and the company's participation and alignment with the dealer who transferred the note. (*International Harvester Co. v. Watkins*, 127 Kan. 50, Syl. ¶ 3, 272 Pac. 139, 61 A. L. R. 687.)

In *Unico v Owen*, 50 N. J. 101, 232 A. 2d 405, the New Jersey court refused to accord holder in due course status to a financing partnership which was closely connected with the transferor and had been organized to finance the commercial paper obtained by the transferor and others. The financing partnership had a voice in setting the policies and standards to be followed by the transferor. Under such circumstances the court found that the holder must be considered a participant in the transaction and subject to defenses available against the payee-transferor. In *United States Finance Company v. Jones*, 285 Ala. 105, 229 So. 2d 495, it was held that a finance company purchasing a note from a payee for fifty percent of its face value did not establish holder in due course status and must be held subject to defenses inherent in the original transaction. Other jurisdictions have followed the rationale of *Unico*. See *American Plan Corp. v. Woods*, 16 Ohio App. 2d 1, 240 N. E. 2d 886, where the holder supplied forms to the payee, established financing charges and investigated the credit of the maker of the note; *Calvert Credit Corporation v. Williams*, 244 A. 2d 494 (D. C. App. 1968), where the holder exerted total control over payee's financial affairs; and *Jones v. Approved Bancredit Corp.*, 256 A. 2d 739 (Del. 1969), where ownership and management of the holder and payee were connected.

In the present case Kaw Valley had worked closely with Co-Mac in over 250 financing transactions over a period of ten years. It knew that some of these transactions were not for valuable consideration at the time the paper was delivered since the bank's money was to be used in purchasing the machinery or equipment represented in the instruments as already in possession of the maker of the note. Kaw Valley had been advised that delivery to Co-Mac's customers was sometimes delayed from 60 to 90 days. Kaw Valley continued to rely on Co-Mac to assure payment of the obligations and contacted it to collect delinquent payments. Some of these transactions, including the one in question, involved the use of coupon books to be used by the debtor in making payment on the notes. In the present case Kaw Valley did not notify Riddle that it was the holder of the note. It delivered Riddle's coupon book to Co-Mac as if it were the obligor or was authorized as its collection agent for this transaction. Throughout the period from

May 11, 1971, to February 25, 1972, Kaw Valley received and credited the monthly payments knowing that payments were being made by Co-Mac and not by Riddle. Then when Riddle's loans were consolidated, the May 11, 1971 transaction was not included by Kaw Valley, either by oversight or by intention, as an obligation of Riddle. Co-Mac occupied a close relationship with Kaw Valley and with its knowledge and consent acted as its agent in collecting payments on notes held by Kaw Valley. The working relationship existing between Kaw Valley and Co-Mac was further demonstrated on February 24, 1972, when the $5,000.00 balance due on one of Riddle's notes was cancelled when it was shown that the machinery for which the note was given had previously been returned to Co-Mac with the understanding that no further payments were due.

K. S. A. 84-3-307 (3) provides:

"After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course."

In the present case the court found that the appellant, Kaw Valley, had not sustained its burden of proving that it was a holder in due course. Under the evidence in this case the holder failed to advise the maker of the note of its acquisition of the note and security agreement. It placed the payment coupon book in the hands of Co-Mac and received all monthly payments from them. A close working relationship existed between the two companies and Co-Mac was clothed with authority to collect and forward all payments due on the transaction. Agency and authority was further shown to exist by authorizing return of machinery to Co-Mac and terminating balances due on purchase money paper. We cannot say under the facts and circumstances known and participated in by Kaw Valley in this transaction it did not at the time in question have reason to know that the defense existed. This was a question of fact to be determined by the trier of fact which if supported by substantial competent evidence must stand.

Findings of the trier of fact if based upon substantial competent testimony are conclusive on appeal. (1-3 Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, § 507, p. 72.)

Other questions were raised on appeal concerning the parol evidence rule and the cross-collateral provision in the security agreement held by Kaw Valley arising out of the February 24, 1972 transaction. The trial court permitted parol evidence of intent

and refused to permit the proceeds of the sale of machinery covered in the February 24, 1972 transaction to be applied to the indebtedness evidenced by the May 11, 1971 note. Our holding that the May 11, 1971 note was subject to the proven defense of failure of consideration cancels the obligation of Riddle on the note.

With no obligation to pay the note any question of using the cross-collateral provision to secure payment of that obligation is a matter not necessary to this decision. This court does not consider questions immaterial to a determination of the controlling issue. (*Greenwood v. Blackjack Cattle Co.*, 204 Kan. 625, 464 P. 2d 281; *Brannum v. Spring Lakes Country Club, Inc.*, 207 Kan. 321, 324, 485 P. 2d 226.)

The judgment is affirmed.