[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14618

_____

D.C. Docket No. 3:10-cv-00222-MCR

DZ BANK AG DEUTSCHE ZENTRAL
GENOSSENSCHAFTSBANK, FRANKFURT
AM MAIN, NEW YORK BRANCH,

Plaintiff- Counter Defendant - Appellee,

versus

MICHAEL MCCRANIE,
a.k.a. Michael J. McCranie,

Defendant-Counter Claimant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 21, 2013)

Before O'CONNOR,[*] Associate Justice Retired, and MARCUS and PRYOR,
Circuit Judges.

O'CONNOR, Supreme Court Justice (Ret.):

_____

[*] Honorable Sandra Day O'Connor, Associate Justice (Retired) of the United States Supreme
Court, sitting by designation.

Claiming to be the holder in due course of a commercial loan on which Appellant Michael McCranie had defaulted, Appellee DZ Bank brought an enforcement suit in federal district court.  McCranie defended the suit on the grounds that DZ Bank was not in fact a holder of the loan because of a problem in the chain of title, and that even if it was, it had obtained the loan subject to certain valid defenses that prevented enforcement.  The District Court granted summary judgment to DZ Bank.  Because we find that the facts surrounding the loan's chain of title were in material dispute, we reverse and remand for further proceedings.

## I.

Although our ultimate point is that there are some key facts in dispute, many of them are uncontested.  In October 2000, McCranie entered into an agreement with Brooke Corporation, an insurance franchising company, to buy a local franchise in Florida.  McCranie borrowed money from a Brooke affiliate called Brooke Credit to finance the sale, and agreed in return to write policies exclusively through Brooke, paying off the loan over time with his commissions.  See Dkt. No. 63-1 at 1-4; Dkt. No. 54-1 at 2.  The original note, as well as a supplemental note executed in 2002, were both made payable only to Brooke Credit or its successors and assigns.  See Dkt. No. 63-1 at 27; Dkt. No. 54-1 at 6.

Trouble arose in August 2008, when McCranie became aware of serious allegations of wrongdoing at Brooke.  According to McCranie, these allegations

2

caused the major insurers to stop working through Brooke, making it impossible for McCranie to write policies, earn commissions, and pay back his loan. McCranie also alleges that Brooke stopped paying him commissions that he was owed out of his trust account. As a result, McCranie wrote to Brooke saying that he wanted to terminate his agreement and restructure his relationship with the insurance carriers so that he could work with them directly and keep the agency afloat. Brooke refused, but continued to unravel—leaving McCranie's franchise all but worthless. Dkt. No. 63-1 at 5-6.

Shortly thereafter, in early October 2008, McCranie received payment demands from two different entities who claimed to have the right to collect on his loan as a consequence of Brooke's demise. The first was from Appellee DZ Bank. Its letter acknowledged McCranie's effort to terminate his agreement with Brooke. But it explained that Brooke Credit had sold the loan to Brooke Funding, which in turn had pledged the loan to DZ Bank, which now intended to start collecting payments. Dkt. No. 63-1 at 64. The second letter was from Home Federal Savings & Loan. It explained that Home Federal had purchased a large interest in McCranie's loan from Brooke Credit in 2004, and that it intended to start collecting payments based on Brooke's default under that 2004 agreement. A copy of the agreement was attached. Dkt No. 63-1 at 68-71. McCranie did not make payments to DZ Bank. Dkt. No. 54-1 at 3. DZ Bank then initiated the present suit.

3

As the rival payment demands suggest, the dispute in this case centers on what really happened with McCranie's loan between 2002 and 2008. DZ Bank contends that, at some point in that span, Brooke Credit assigned the loan to Brooke Funding. See Dkt. No. 54-1 at 2. It further contends that, in August 2006, Brooke Funding pledged the loan to DZ Bank as collateral for a different loan on which Brooke Funding later defaulted. Its evidence for this chain of title is hardly ironclad. It points to a "Surrender of Collateral" agreement entered into on October 30, 2008, which references the supposed 2006 agreement and lists McCranie's loan among the collateral to be surrendered from Brooke Funding to the bank. Dkt. No. 54-1 at 19, 28. To document the initial transfer from Brooke Credit to Brooke Funding, it points to nothing more than one sentence in an affidavit from a vice president at DZ Bank, who does not explain how he could know anything about internal dealings among Brooke affiliates occurring years earlier. See Dkt. No. 54-1 at 2. Nevertheless, DZ Bank claims that it has standing to seek enforcement of the loan as a holder in due course because it has the original loan documents, see Dkt. No. 54-1 at 3, and obtained them in good faith, for value, and without any knowledge of potential problems with the loan.

McCranie's response here, as below, is that there is simply not enough evidence of DZ Bank's story to support summary judgment. First, he argues that there are genuine issues of material fact as to the chain of title, and whether Brooke

4

Credit ever assigned the loan to Brooke Funding in the first place. After all, he says, Home Federal's documents suggest that it was the one that bought the loan from Brooke Credit. See Appellant's Br. 12-15. Second, McCranie argues that there is at least a dispute as to when DZ Bank obtained the loan. The only documents DZ Bank has produced to corroborate its purchase are agreements from late October 2008—after it had acknowledged McCranie's effort to terminate his franchise agreement and news of Brooke's troubles had become public. That timing shows, McCranie argues, that even if DZ Bank can establish title, it is not a holder in due course because it had knowledge of McCranie's potential defenses when it actually took the loan. See id. at 15-16.

The District Court sided with the bank. It held that DZ Bank was a holder in due course because "it took assignment of the Loan for value paid, in good faith and without notice of any claim or defense relating to the Loan." Dkt. No. 71 at 5 (citing Kan. Stat. Ann. § 84-3-302(a)). In so holding, it appears to have assumed that the loan was in fact transferred from Brooke Credit to Brooke Funding, citing only the DZ Bank executive's affidavit discussed above. See id. at 1-2 (citing Dkt. No. 54-1 at 2). It also agreed with the bank that, per the reference in the October 2008 agreement, Brooke Funding first pledged the loan to DZ Bank in 2006, well before the bank could have had knowledge of the problems at Brooke and McCranie's suggested defenses. Id. at 5 & n.4. Accordingly, the court rejected

5

McCranie's defenses as inapplicable to a holder in due course and granted summary judgment to the bank.

## II.

A grant of summary judgment is reviewed de novo, and all inferences must be drawn in McCranie's favor as the non-moving party. See Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). As the moving party, DZ Bank must establish that there are no genuine issues of material fact for trial, and that the undisputed or indisputable facts entitle it to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). As the foregoing suggests, the District Court erred in finding that DZ Bank had made this showing.

To begin, there is no question that the parties actually do dispute the chain of title, and with it, whether DZ Bank is properly the owner or holder of the loan, with standing to enforce it. Accordingly, DZ Bank has only two options to defend the grant of summary judgment. First, it can argue that the evidence is so overwhelming in its favor that no rational juror could find to the contrary. Chapman, 229 F.3d at 1023. Second, it can argue that the dispute about the chain of title is not material because it does not "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). DZ Bank tries both approaches, but neither works.

6

As to the evidence, DZ Bank's showing regarding the chain of title is anything but overwhelming. Again, its only direct evidence of the assignment from Brooke Credit to Brooke Funding is one sentence in an affidavit from a DZ Bank executive who has not explained how he could have personal knowledge regarding such a transaction. See Dkt. No. 54-1 at 2. Nor do the agreements identified by DZ Bank do much, if anything, to bolster this showing. Those agreements merely confirm that Brooke Funding assigned whatever interest it had to DZ Bank; they do not show that Brooke Funding received a valid assignment of the loan from Brooke Credit in the first place.[1] Moreover, McCranie has produced an agreement in which Brooke Credit purported to sell almost its entire interest in the loan to an entirely different bank. Especially in light of the allegations of malfeasance and poor accounting surrounding the Brooke companies at the relevant times, these inconsistencies raise real questions about whether a valid assignment ever existed. A rational trier of fact could well conclude that DZ Bank has not demonstrated a chain of title that leads back to Brooke Credit.

As to materiality, DZ Bank sometimes appears to argue that it has the status of a holder in due course merely because it has physical possession of the original loan documents and paid consideration for them without knowledge of any

---

[1] Similarly, the fact that Brooke Credit was a party to the October 30, 2008 agreement shows only that it acknowledged Brooke Funding's pledge of the loan to DZ Bank; the bank does not argue—nor could it—that this acknowledgement actually suffices as an assignment from Brooke Credit to Brooke Funding.

7

defenses.  E.g., Appellee's Br. at 17.  To be sure, Kansas law (which governs here) makes clear that "a holder in due course is a holder who takes the instrument (1) for value, (2), in good faith, and (3) without notice of any defenses against it." Kaw Valley State Bank & Trust Co. v. Riddle, 549 P.2d 927, 932 (Kan. 1976). But before reaching those three elements, the putative holder in due course must show that he is a holder in the first place.  Kansas law defines a holder as a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."  Kan. Stat. Ann. § 84-1-201(b)(21)(A).  This note is not payable to bearer; it is payable only to Brooke Credit or its assigns.  See Dkt. No. 63-1 at 27; Dkt. No. 54-1 at 6.  Accordingly, DZ Bank's possession of the loan documents does not make it a holder unless it can show a chain of assignments leading back to Brooke Credit.  And as we have already discussed, it cannot meet the summary judgment standard on that evidentiary point.

At trial, DZ Bank may be able to prove to the trier of fact that there was a proper assignment along every link in the chain of title, or that it should prevail for some other reason.  But at this stage, the existence of a valid assignment from Brooke Credit to Brooke Funding appears to be a material fact, and one that is certainly subject to reasonable dispute. The grant of summary judgment to DZ

8

Bank is accordingly **REVERSED** and this case is **REMANDED** to the District

Court for further proceedings consistent with this opinion.