## The First National Bank of Philadelphia
## v. Anderson

*Achey & Power*, for plaintiff.
*Ross & Smith*, for defendants.

BIESTER, P. J., February 17, 1956.—This matter is before us on the petition of above defendants to open the judgment referred to in the caption, the depositions taken in support thereof and the answer filed in response thereto.

The judgment in question was entered on a warrant of attorney contained in the judgment note dated August 11, 1954, in the amount of $895.32 payable to the order of Atlantic Storm Window Co. and endorsed by it for value to plaintiff, the First National Bank of Philadelphia.

The depositions reveal that the judgment note was executed on July 14, 1954, and appeared on the same sheet of paper as the contract. Petitioners affixed their signatures to both parts of the document. According to petitioners' testimony, the contract, providing for the installation of 12 jalousie windows, was to be in the amount of $744, with monthly payments of approximately $20 each. It was the further contention of petitioners that the judgment note was signed in blank and that the writing, including the figures now appearing on the judgment note, were not present at the time of execution and that their approval of the work done was to be given before any payments became due on the contract. On August 10, 1954, the Atlantic Storm Window Co. began the installation of the windows, but it is petitioners' version that the work was improperly done and that the windows as installed were not as represented to be at the time the contract was signed.

When petitioners received notice from plaintiff that payments were to be made to it, they complained to plaintiff of the defective work and petitioners refused to make any payments on account of the note. As a result, the note was entered as a judgment in the Office of the Prothonotary of Bucks County on December 9, 1954.

In the petition to open the judgment petitioners set forth, as grounds, allegations that petitioner did not have sufficient opportunity to examine the contract and the judgment note before signing, that the agreed price for the work was to be $744, whereas the amount of the note as later filled in by the payee, without the consent of petitioners, was $895.32, that the material furnished under the contract was defective and the work thereunder improperly done.

It is the position of plaintiff that it was a holder in due course for value, without notice, and that it is, therefore, not subject to the various defenses and objections raised by petitioners.

Our first inquiry must be of determination of the question of whether, under the facts revealed by the record before us, plaintiff is a holder in due course.

Section 3-302 of the Uniform Commercial Code of April 6, 1953, P. L. 3, the provisions of which govern the proceeding before us, states that:

"(1) A holder in due course is a holder who takes the instrument

"(a) for value; and

"(b) in good faith including observance of the reasonable commercial standards of any business in which the holder may be engaged; and

"(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

It is our understanding that, as to these provisions, defendants contend that the bank was not a holder in due course in that it did not take the instrument in good faith, on the theory that it became incumbent upon plaintiff to communicate with the payee and/or the makers of the note to determine whether the work had been satisfactorily completed before accepting the note. We find no merit in this contention.

In International Finance Company v. Magilansky, 105 Pa. Superior Ct. 309, 311, 312, the court said:

"The note, in question, was given in payment of the installation of a heating plant in the house of the defendants. The payee of the note failed to carry out its contract, and the defendants claim that the lack of consideration can be shown as a defense to the note in the hands of the endorsee. The court took the position that the endorsee had or was presumed to have had knowledge of the infirmity of the note in that the consideration for which it was given had failed . . . Granting, arguendo, that the endorsee of the note knew that the payee was in the business of installing furnaces, and that it took notes of the same character as the one in suit in its various transactions, this knowledge did not charge him with notice of the infirmity of this particular note. There is an entire absence of proof, (in fact, there is testimony to the contrary) that the endorsee at the time the note was negotiated had anything to do with the payee company, had any interest in the concern, or had any intimate knowledge of its transactions . . .

"The note in question was a negotiable instrument, it was payable in installments, and a clause contained therein, provided that a failure to pay any installment when due would make the whole note due: Home Credit Company v. Preston, 99 Pa. Superior Ct. 457. Plaintiff was entitled to the presumption that it was a holder in due course until evidence was produced showing its title to be defective: Dull v. Mitchell, 283 Pa. 88; Act of May 16, 1901, P. L. 194, Section 59; Putnam v. Ensign Oil Company, 272 Pa. 301. The failure of the payee to carry out its contract does not affect the title of one who is the holder in due course: Levitt v. Johnstown Office Supply Co., 103 Pa. Superior Ct. 76. Knowledge on the part of the endorsee

of a negotiable note that the consideration for it was something to be performed in the future does not imply notice to him of the failure of consideration: Detroit Savings Bank v. Towers, 42 Pa. Superior Ct. 246."

In Interstate Contracting Co., Inc., to use v. Mager, No. 1, 51 D. & C. 113, an argument similar to the one now advanced before us was presented to the court, defendants stating that, " 'the plaintiff bank frankly admits that it not only did not know at the time the note was purchased whether the contract had been completed, but did not even go into the question of completion of the contract'."

The court held that the bank was under no requirement of making inquiry to ascertain whether the payee had satisfactorily completed his contract, "even though the consideration in the note be to cover the price designated for the completion of the work covered by the contract".

"To defeat the rights of one dealing with negotiable securities it is not enough to show that he took them under circumstances which ought to excite the suspicion of a prudent man and cause him to make inquiry, but that he had actual knowledge of an infirmity or defect, or of such facts that his failure to make further inquiry would indicate a deliberate desire on his part to evade knowledge because of a belief or fear that investigation would disclose a vice in the transaction. This test, that of good faith with respect to negotiable instruments, is prescribed alike at common law, by the Negotiable Instruments Law of 1901, P. L. 194, and by the Uniform Fiduciaries Act of 1923, P. L. 468: Phelan v. Moss, 67 Pa. 59; Union Bank and Trust Co. v. Girard Trust Co., 307 Pa. 488, 500, 501, 161 A. 865, 868, 869; Davis, Trustee, v. Pennsylvania Company, 337 Pa. 456, 459, 460, 12 A. 2d 66, 68, 69": First National Bank of Blairstown v. Goldberg, 340 Pa. 337, 340.

Although these cases are decided under the Negotiable Instruments Law of May 16, 1901, P. L. 194, we find no provision in the Uniform Commercial Code making any change in the good faith concept. True, section 1-201 defines good faith as being honesty in fact and under section 3-302 good faith includes the observance by reasonable commercial standards of any business in which the holder may be engaged. No evidence was presented, however, indicating that the failure to make inquiry of the payee or the maker of the note as to the satisfactory completion of the contract was in any sense a divergence from common banking or commercial practice. On the contrary, if a holder of an instrument were required to investigate in each instance whether the contract had been completed satisfactorily before accepting it, the burden placed on the free flow of negotiable paper would be almost insurmountable.

We, therefore, find that plaintiff bank accepted the paper in good faith and is a holder in due course.

An additional argument advanced was that, even if plaintiff be a holder in due course, it is, nevertheless, subject to the defense set forth in section 3-305 of the code which states that a holder in due course takes the instrument subject, inter alia, to "such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." In other words, fraud in the essence, or fraud in the factum, is effective as a defense against a holder in due course.

We do not conceive it to be the intention of the legislature to alter the long-established rule that where there is no legal justification for failure to read a written contract on which suit is brought, failure to read is an unavailing excuse or defense and cannot

justify an avoidance, modification or nullification of the contract or any provision thereof: Berardini v. Kay, 326 Pa. 481; Schoble v. Schoble, 349 Pa. 408; Silberman v. Crane, 158 Pa. Superior Ct. 186.

We are in accord with the comment under the section involved to the effect that a number of factors should be taken into consideration in determining the efficacy of fraud in factum as a defense. Amongst these are age and sex of the party, his intelligence, education and business experience, his ability to read or understand English, representations made to him and his reason to rely on them or have confidence in the person making them, the presence or absence of any third party who might read or explain it to him and the apparent necessity or lack of it, for acting without delay.

In the instant case the three defendants all sat at the same table and each in turn signed the instrument at the places indicated by the agent of the Atlantic Storm Window Co. We have carefully read the testimony as to the circumstances under which the instruments were signed and find no possible excuse for the failure either to read the instrument, to have it read or to seek information from others present regarding it. It is true that Aldred Anderson, one of defendants, has but little formal education, but he is clearly not illiterate. As to Ella Anderson, she said that some of the print was too fine for her to read. Third defendant, Amy Darrah, was evidently relied upon by the other petitioners in transactions of this kind and is a bookkeeping clerk in the revenue accounting department of The Bell Telephone Company. There is no suggestion that the other parties asked her to read the contract and explain it to them and her only excuse for not reading it was that Mr. Jacobs, payee's agent, was talking and because of this talking she had no real chance to examine the documents.

The testimony is completely devoid of any refusal on the part of Jacobs to permit the contract being read or of any attempt on the part of petitioners to seek information as to its terms. Under all of the circumstances we find that defendants cannot as a defense now state that they failed to understand the contract that they were signing and that they did not comprehend the legal effect the judgment note had.

As to the alleged alteration of the judgment note in that it is said to have been completed contrary to the original agreement of the parties, section 3-407 of the Uniform Commercial Code appears to clearly control the situation. It provides, inter alia, that when an incomplete instrument has been completed, the subsequent holder in due course may enforce it as completed. Without holding that there was a material alteration of the instrument, we do find that even if there was such an alteration it would not be effective as a defense against the holder in due course.

As was said in the recent and remarkably similar case of Newark Trust Co. v. Herr, 54 Lanc. pp. 31, 34:

"The difficulty with defendants' position is that all the acts of infirmity alleged in the petition to open the judgment existed between the immediate parties to the note and not between the parties and the plaintiff as a holder in due course, and as there is no allegation that plaintiff had notice of any infirmities at the time it was negotiated to it, the defendants cannot avail themselves of such alleged infirmities as against the plaintiff as a holder in due course."

*Order*

And now, to wit, February 17, 1956, the petition to open the judgment is refused and the rule granted thereon discharged at the cost of petitioners.