WATERBURY SAVINGS BANK *v.* HENRY J. JAROSZEWSKI
ET AL.

CIRCUIT COURT                                   FOURTH CIRCUIT
                                    FILE No. CV 4-6703-7631

Memorandum filed December 8, 1967

*Joseph Levine,* of Waterbury, for the plaintiff.

*Donal C. Collimore,* of Fairfield, for the defendants.

Norton M. Levine, J. Plaintiff bank commenced this action against defendants, husband and wife, based on a promissory note dated May 17, 1966, in the principal sum of $1850, payable in twenty-four equal instalments of $88, including interest.

Execution of the note was preceded by negotiations between defendants and Merit Food Corporation, hereinafter called Merit, a concern which specialized in the sale of food to homeowners, on a contract basis, and based on periodic shipments. The final discussions took place at the home of defendants when two salesmen from Merit were present. At that time, defendants signed a "Purchase and Sales Agreement" covering three deliveries by Merit of frozen foods, for $2000, and loan of a freezer in connection therewith. The agreement provided for payment of the balance over twenty-four months. At that time, the Merit salesmen exhibited to defendants a four-page form prominently displaying the name of plaintiff. The first page was captioned, "Request for personal loan." The second page was a promissory note form. The third page, containing many blanks, was entitled "Credit Application." The fourth page provided for an authorization by defendants to plaintiff to pay the proceeds of the loan, to wit, $1850, directly to Merit. Both defendants signed the note, as well as the first page of the credit application, which contained details as to the financial status of defendants. Defendant Henry J. Jaroszewski signed the payment authorization.

Subsequently, plaintiff mailed defendants a payment book containing stubs and providing for payments on the note at the rate of $88 per month. Defendants made two payments on account, for a

total of $176, and no more. Defendants accepted three deliveries of food worth about $200 but found fault with same and instructed Merit not to make any further shipments. Plaintiff made a direct disbursement to Merit of $1850, following execution of the note, pursuant to the signed authorization of defendant husband.

Defendants' answer pleaded that the note was signed as a result of fraudulent representations by employees of Merit to the effect that the note was merely a "credit application" and nothing more. Defendants further alleged fraud of Merit in that they signed the documents when they were not fully completed, and that the Merit employees misrepresented what would be filled in. Defendants attempted to impute knowledge to plaintiff of the claimed fraud, alleging that plaintiff knew, or should have known, of Merit's misconduct, as a result of prior similar transactions financed by plaintiff for Merit customers. Plaintiff denied these allegations and relied upon a claim of status as a holder in due course.

It is now established that plaintiff, as a payee, may be a holder in due course. General Statutes § 42a-3-302 (2). The court finds, in the instant case, that plaintiff is, in fact, a holder in due course in that it took the note in good faith and under the validating conditions of § 42a-3-302. Initially, no representative of plaintiff was present at the meeting at defendants' home when the documents were signed, and there was no testimony that any agent of plaintiff participated, in any way, in the negotiations leading to execution of the note and contract. There was nothing in the evidence to show that plaintiff was aware of any defenses at the time it discounted the note. *Hartford National Bank & Trust Co.* v. *Credenza,* 119 Conn. 368, 371. The fact that, subsequent to said conference, and after

plaintiff had issued its check to Merit, defendants complained to plaintiff regarding Merit's conduct and their status as comakers does not alter the basic conclusion. If plaintiff was a holder in due course at the time it took delivery of defendants' note, notice thereafter to it of Merit's claimed fraud or defective performance would not change its legal position. General Statutes § 42a-3-304 (6); Uniform Commercial Code § 3-304, comment 12; *Universal C.I.T. Credit Corporation* v. *Ingel,* 347 Mass. 119, 125.

The evidence disclosed that plaintiff had engaged in about five to six hundred similar financing transactions with Merit and its customers and that complaints of defective food service, or related items, had been received by plaintiff in about three to four cases. The complaints, percentagewise, were quite minimal. In any event, it is settled that receipt by a lender of miscellaneous prior complaints regarding a vendor does not prevent the lender from qualifying as a holder in due course, so long as the lender had no notice of a complaint by the particular customer involved, at or before the time it accepted the customer's note. *Universal C.I.T. Credit Corporation* v. *Ingel,* supra. Hence, defendants' attack on plaintiff's status, based on the "prior experience" argument, is without merit.

Failure of plaintiff to inquire as to proper performance by Merit of its underlying contract with defendants does not show a lack of good faith or alter its status under § 42a-3-302, General Statutes § 42a-3-304 (4), (6); *First National Bank* v. *Anderson,* 7 Pa. D. & C.2d 661, 666.

It is undisputed that plaintiff supplied the forms used by Merit to secure defendants' signatures on the note and credit application. This fact, alone, however, falls short of creating a principal-agent

relationship between plaintiff and Merit so as to impute knowledge to plaintiff of Merit's conduct, or make plaintiff responsible for Merit's acts or omissions. *Park National Bank* v. *Motyl,* 13 Mass. App. Dec. 67, 73.

Defendants urge that they did not know that they were signing a note; that they believed same merely to be a credit application; that they were induced to sign by what they characterize as fraud, or more technically, fraud in the factum; see *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467; and that those facts, if proved, would avoid liability to plaintiff even as a holder in due course. General Statutes § 42a-3-305 (2) (c). The court has reviewed the testimony as to execution very carefully, and further, the age, personality, and other background characteristics of defendants. It finds that no fraud was perpetrated upon defendants by virtue of the acts of Merit. See § 42a-3-305 (2) (c); Uniform Commercial Code § 3-305, comment 7. Defendants may have failed to read fully each and every item of the documents presented to them for signature. Nevertheless, the said omission of defendants, if it existed, does not convert the situation into one of fraud in the factum. Defendants, in the court's opinion, did have knowledge, or a reasonable opportunity to obtain knowledge, of the character or essential terms of the note before they signed same. See General Statutes § 42a-3-305 (2) (c). Accordingly, they cannot now claim a cancelation of the note, once it has passed into the hands of a holder in due course such as plaintiff. *Burchett* v. *Allied Concord Financial Corporation,* 74 N.M. 575, 580; *First National Bank* v. *Anderson,* supra.

In the strikingly similar case of *First National Bank & Trust Co.* v. *Roehl,* 146 Conn. 125, defendants claimed that they had been induced to sign a

note by a representation of the payee, a salesman of storm windows, that it was solely to determine credit. Defendants also alleged that they had signed the note in blank. The court held that defendants had failed to prove a case of fraud sufficient to cancel their liability to plaintiff bank, a holder in due course.

The court concludes, on this initial phase, that the allegations of Merit's fraud and misrepresentation are without credible support and do not invalidate plaintiff's status as a holder in due course.

Defendants next claimed that at the time of execution the numerals evidencing the principal sum of $1850 were not present on the note, the credit application, or the authorization to pay, and that the numerals were subsequently inserted. The identity of the persons actually inserting the numerals was, however, not precisely established. Plaintiff's evidence was, and the court finds, that at the time plaintiff received the documents they had been fully completed, including the $1850.

Section 42a-3-115 of the General Statutes deals with the completion of an incomplete instrument, either when authorized or where unauthorized. Section 42a-3-115 further places the burden of proof, as to unauthorized completion, upon defendants. Uniform Commercial Code § 3-115, comment 6. If "completion" is unauthorized, § 42a-3-115 states that the "alteration" rules of § 42a-3-107 apply. In other words, § 42a-3-115 treats an unauthorized completion as an alteration, in passing on the consequences of same.

We may even assume that the note lacked the $1850 figure at the time when defendants affixed their signatures and delivered same to Merit's employees. In such event, the results would be controlled by § 42a-3-407 and in particular by sub-

section (3), pertaining to plaintiff's rights herein. Section 42a-3-407 (3) states, relative to a holder in due course: ". . . and when an incomplete instrument has been completed, he may enforce it as completed." See official comment 4 to § 42a-3-407 (3), which has substantial application to the instant case: "Where blanks are filled or an incomplete instrument is otherwise completed, this subsection follows the original Section 14 in placing the loss upon the party who left the instrument incomplete and permitting the holder to enforce it in its completed form." Uniform Commercial Code § 3-407, comment 4. It will be recalled that the $1850 figure, inserted as the principal sum of the note, was actually less than the $2000 figure contained in the underlying contract. A payee may be a holder in due course even though the note was incomplete as to amount when signed by defendants. *Sun Oil Co.* v. *Redd Auto Sales, Inc.,* 339 Mass. 384, 387; *Newark Trust Co.* v. *Herr,* 88 Pa. D. & C. 29.

Moreover, the court finds that if the said figures, at the inception, could be deemed to have been inserted following defendants' signatures, and without authority, the completed note was subsequently ratified and approved by defendants by virtue of their payments on account and acceptance of initial deliveries.

It is, therefore, concluded that defendants have failed to sustain their burden of proof on this issue, and that plaintiff is entitled to enforce the note, in its completed form, against defendants.

Judgment will enter for plaintiff to recover of defendants the sum of $1727.48 principal; $219.39 interest (as stipulated by the parties); $250 counsel fees; plus taxable costs.