IRVING, P. J.,
for the Court:
¶ 1. TJ’s Western Ware Inc. (TJ’s) and Jean H. Ramey Holder filed suit in the Forrest County Circuit Court against Ronald K. Jefcoat, alleging breach of contract, breach of the duty of good faith and fair dealing, tortious interference with a contract, fraud, conversion, and unjust enrichment. Jefcoat countersued TJ’s and Hold *1075 er for damages resulting from his alleged partial ownership of the business, but later abandoned these claims during the jury-instruction conference. After a two-day trial, the jury returned a verdict in favor of Jefcoat. The circuit court denied TJ’s and Holder’s subsequent motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. Feeling aggrieved, TJ’s and Holder appeal and argue that the circuit court erred in giving jury instruction D-l and that the jury’s verdict is against the overwhelming weight of the evidence.
¶ 2. We agree with TJ’s and Holder’s contention that the circuit court erred in giving jury instruction D-l and that the verdict is against the overwhelming weight of the evidence. Therefore, we reverse the judgment of the circuit court and remand this case for further proceedings.
FACTS
¶ 8. Holder opened TJ’s in 1993 in Hat-tiesburg, Mississippi, as a retail business that sells western apparel. Soon after TJ’s opened, Holder hired Jefcoat, who was married to Holder’s daughter, Tina, at the time, to manage the business. Jefcoat eventually became president and treasurer of TJ’s. Holder and TJ’s allege that after Jefcoat became an officer within the company, he loaned himself $74,300 from the corporate account and unlawfully pocketed some of the business’s profits.
¶ 4. At trial, Holder testified that she was the sole owner of TJ’s. When Holder opened TJ’s, she invested approximately $125,000 in the business. She did not collect a paycheck initially, but hoped that the business would become successful enough that she would eventually be able to recover her investment. She admitted that she made Jefcoat an officer in the company after he began working for her, but she never agreed to sell him any percentage of the business. Holder allowed Jefcoat and the business’s accountant to handle the business’s tax filings. Therefore, any information that the accountant received reflecting TJ’s ownership percentages was provided by Jefcoat. Holder insisted that even though the tax returns showed that Jefcoat owned twenty-four percent of the business, she never sold Jefcoat any percentage of the business, and Jefcoat has never invested any money in the business.
¶ 5. Additionally, Holder admitted that the company does not have any bylaws. Therefore, there are no documents that outline the responsibilities or the scope of authority for any of the company’s directors or officers. Holder stated that she learned that Jefcoat was writing multiple payroll checks to himself when she started reviewing the bank statements for the corporate account. She noted that she probably would not have objected to the increase in pay that Jefcoat gave himself as long as the business could afford it. However, she disagreed with Jefcoat writing himself two or three paychecks per week and loaning money to himself out of the corporate account. Holder insisted that she fired Jef-coat after discovering that he had been misappropriating money and not as a result of the pending divorce proceedings between Jefcoat and Tina.
¶ 6. Jefcoat admitted that he loaned money to himself from TJ’s corporate account after Holder placed him in charge of the business. He also admitted that he wrote multiple payroll checks to himself. However, Jefcoat insisted that TJ’s owed him money because he was a partial owner of the business. Jefcoat stated that he and Tina “paid the store off,” but Holder told the store’s accountant that Jefcoat only owned a twenty-four percent interest in the business. He admitted that he never invested any of his personal funds into *1076 the business but that he and Tina “paid the business off with the business.” He mentioned that he listed his withdrawal of money from the business account as a loan so that he could later create a tax shelter to avoid paying taxes on the money. Jef-coat stated that he and Tina borrowed approximately $60,000 from the business account, but he could not prove that the outstanding balance on the loans was not $74,300.
¶ 7. Jefcoat testified that he never tried to hide the store’s financial records from Holder. All of the financial transactions were documented in the store’s financial ledgers. The transaction ledger and other records would have been made available to Holder any time that she'wanted to review them. Holder fired Jefcoat shortly before Tina initiated divorce proceedings against him. Jefcoat and his brother opened a western-ware store in close proximity to TJ’s in 2008. He believed that Holder and Tina filed this suit in an attempt to ruin him financially.
¶ 8. During the jury-instruction conference, Jefcoat informed the court that he wanted to withdraw his counterclaims against TJ’s and Holder. Jefcoat requested only one jury instruction — D1—which the circuit court gave to the jury.
¶ 9. Additional facts, as necessary, will be related in our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. Jury Instruction D-l

¶ 10. TJ’s and Holder argue that the circuit court erred in giving jury instruction D-l because it was confusing, was misleading, and was a misstatement of the law. More specifically, TJ’s and Holder contend that the instruction allowed the jury to relieve Jefcoat of his responsibility to repay the loans if it found that he had the authority to make the loans to himself. Jefcoat counters that the circuit court did not err in giving instruction D-l because the instruction is a correct statement of the law on unjust enrichment. We agree with TJ’s and Holder.
¶ 11. Our law is well settled with respect to how jury instructions are to be considered. “The general rule ... is that the [circuit] court has considerable discretion when instructing the jury[J” Utz v. Running & Rolling Trucking, Inc., 32 So.3d 450, 474 (¶ 78) (Miss.2010) (citing Bickham v. Grant, 861 So.2d 299, 301 (¶ 8) (Miss.2003)). In reviewing allegations of error in the refusal of a specific jury instruction, appellate courts read the instructions as a whole. Whitten v. Cox, 799 So.2d 1, 16 (¶ 39) (Miss.2000). “While a party is entitled to jury instructions that present [the party’s] theory of the case, this entitlement is limited; the [circuit] court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Young v. Guild, 7 So.3d 251, 259 (¶ 23) (Miss.2009) (citing Ford v. State, 975 So.2d 859, 863 (¶ 11) (Miss.2008)). Additionally, “it would be error to [give] an instruction which is likely to mislead or confuse the jury as to the principles of the law applicable to the facts in evidence.” Id. (quoting Southland Enters. v. Newton Cnty., 838 So.2d 286, 289 (¶ 9) (Miss.2003)).
¶ 12. Jefcoat submitted jury instruction D-l, which states:
Unjust [e]nrichment applies to situation[s] where there is no legal contract and the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.
*1077 The Plaintiff, [TJ’s] Western Ware, Inc.[,] claims [that the] Defendant^] Ronald Jefcoat[,] unjustly enriched himself by making loans and taking profit out of the business that he was not authorized to do.
Therefore!,] if you find from a preponderance of the evidence that Ronald Jef-coat unjustly enriched himself by making loans and taking profits out of the business without the authority to do so, then your verdict shall be for the Plaintiff, [TJ’s] Western Ware, Inc.
However, if you find that Jefcoat had full authority to make loans and take profits from [TJ’s] Western Ware, Inc., then your verdict shall be for the Defendant, Ronald Jefcoat.
(Emphasis added). Although instruction D-l allowed the jury to exonerate Jefcoat from liability for both the loans that Jef-coat made to himself and the profits that he took out of the business if it found that he had the authority to do so, TJ’s and Holder do not challenge the jury’s finding with respect to the profits taken.[1]
¶ 13. While instruction D-l may have properly stated the law regarding unjust enrichment, it also confused and misstated the law regarding Jefcoat’s responsibility to TJ’s as a debtor to the company. The final paragraph of instruction D-l allowed a verdict in Jefcoat’s favor if the jury found that he had authority to take profits from the business. The instruction also directs the jury to find in favor of Jefcoat if he “had full authority to make loans[.]” Under this instruction, in order for the jury to return a verdict against Jefcoat, making him liable for the repayment of the loans to TJ’s, it would have had to find that he did not have the authority as an officer of the company to make the loans. However, Jefcoat’s responsibility to repay the loans to TJ’s was not diminished if he, as an officer of the company, had the authority to make the loans to himself. Regardless of his position in the company, once he made the loans to himself, he became a debtor to the company, under an obligation to repay the money that he had borrowed.
¶ 14. Jefcoat’s defense to TJ’s and Holder’s allegation that he had unjustly enriched himself was that his partial ownership of the business cloaked him with authority to make the loans to himself and relieved him of the responsibility of repaying the loans. However, during the jury-instruction conference, Jefcoat abandoned his claims of partial ownership:
THE COURT: Are you asking them to say that Mr. Jefcoat owns a percentage of TJ’s?
[COUNSEL FOR JEFCOAT]: No, sir, I’m not, and I told them that we withdrew that.
[COUNSEL FOR TJ’S]: No credit.
THE COURT: Do what?
[COUNSEL FOR TJ’S]: If he’s not asking did he own a percentage of TJ’s, there’s no credit, there’s no setoff, he’s liable.
By relinquishing these claims, Jefcoat abandoned any claim that he acted with authority when making the loans to himself. Therefore, with Jefcoat’s lack of authority to make the loans to himself established, there was no evidence to support an instruction allowing the jury to absolve him of liability for repayment of the loans.
¶ 15. The dissent finds that any confusion created by instruction D-l is resolved *1078 when read in conjunction with instruction AP-2, which reads in pertinent part:
You are instructed that no person is entitled to unjustly enrich himself with profits from a corporation. Unjust enrichment applies when there is no legal contract and a person possesses money, which in good conscience and justice he should not retain. In that circumstance, the money should be delivered to the rightful owner. TJ’s Western Ware, Inc. claims Defendant, Ronald Jefcoat, unjustly enriched himself by making loans to himself and [by] taking other profits out of the business which he was not authorized to do. If you find by a preponderance of the evidence that Defendant, Ronald Jefcoat, unjustly enriched himself, then you are to return a verdict in favor of the Plaintiff.
(Emphasis added). We disagree with the dissent’s conclusion because instruction AP-2 does not take into consideration Jef-coat’s withdrawal of his claim of ownership in the business, and, just like instruction D-l, instruction AP-2 allowed the jury to relieve Jefcoat of repaying the loans if he had the authority to make the loans, which is a misstatement of the law. Also, the dissent misreads instruction AP-2 as affirmatively stating to the' jury that Jefcoat “was not authorized to make loans to himself and to take profits out of the business.” Dis. Op. at (¶ 2). If this were true, then instruction AP-2 would substantively conflict with instruction D-l, which allowed the jury to find in favor of Jefcoat only if it determined that he had the authority to make the loans, while instruction AP-2, when read in conjunction with instruction D-l, would have removed that discretion from the jury and required the jury to find for TJ’s and Holder. Thus, it cannot be said that reading instruction AP-2 together with instruction D-l would alleviate any confusion. Our supreme court has stated that “[w]here two or more instructions are in hopeless and substantive conflict, [appellate courts] may reverse.” Smith v. Mack Trucks, Inc., 819 So.2d 1258, 1261 (¶ 9) (Miss.2002) (citing Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40-41 (Miss.1989)).
¶ 16. Additionally, although not discussed by TJ’s and Holder as a basis for error, we also find that the circuit court erred in giving instruction D-l to the jury because the instruction was unsupported by the evidence. It is rather clear that instruction D-l should not have been given because (1) it lacks evidentiary support and conflates two kinds of unauthorized funds taken from TJ’s by Jefcoat: loans and profits. Jefcoat, as an officer of TJ’s, gave himself copious raises that diminished the profits of the company, thereby unjustly enriching himself. He also admitted to making unauthorized loans to himself, initially justifying his actions by claiming partial ownership of TJ’s. As previously stated, he later abandoned his claim of ownership. Therefore, since the evidentiary condition upon which Jef-coat’s non-liability for repayment of the loans rested was nonexistent, we find that the circuit court erred in giving instruction D-l to the jury. Accordingly, we reverse the judgment entered on the jury’s verdict and remand this case for further proceedings.

II. Weight of the Evidence

¶ 17. TJ’s and Holder alternatively contend that, if the circuit court properly submitted instruction D-l to the jury, the overwhelming weight of the evidence did not support a verdict in favor of Jefcoat regarding the repayment of the outstanding loans. When reviewing a claim that a jury’s verdict is against the overwhelming weight of the evidence, appellate courts will construe the evidence in the light most favorable to the verdict. R. *1079 McKnight & Son v. C & I Entm’t, 100 So.3d 1022, 1026 (¶ 11) (Miss.Ct.App.2012). Reversal is proper only when the reviewing court is convinced that allowing the verdict to stand would sanction an unconscionable injustice. Robinson Prop. Grp., Ltd. P’ship v. McCalman, 51 So.3d 946, 948 (¶ 9) (Miss.2011).
¶ 18. Because we have found that the circuit court erred in giving instruction D-l to the jury, we need not necessarily consider TJ’s and Holder’s alternative argument. Nevertheless, we note that the verdict is also against the overwhelming weight of the evidence. The Mississippi Supreme Court has held that “[wjhere the evidence clearly shows that the maker is indebted to the payee on a note, but the jury returns a verdict for the defendant, such verdict is erroneous and must be set aside.” Kaiser Invs., Inc. v. Linn Agriprises, Inc., 538 So.2d 409, 412-13 (Miss.1989) (citing Dobbs-Maynard Co. v. Jumper, 388 So.2d 879, 883 (Miss.1980)). Furthermore, “where the maker’s indebtedness on a note is clearly shown by the evidence, any verdict for the defendant less than the proven amount is erroneous.” Id. (citing Campbell v. Kelley, 719 S.W.2d 769, 771-72 (Mo.1986)).
¶ 19. During trial, Jefcoat admitted that he had made the loans to himself from the company’s corporate account. He also admitted that some of the loans had not been repaid. TJ’s and Holder presented evidence that the outstanding loan balance was $74,300. Jefcoat did not dispute this amount. Therefore, the jury’s verdict absolving Jefcoat from the responsibility to repay the outstanding loan balance is against the overwhelming weight of the evidence. Accordingly, we reverse the jury’s verdict and remand this case for further proceedings.
¶ 20. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., GRIFFIS, P.J., BARNES, ROBERTS, MAXWELL AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY ISHEE, J. FAIR, J., NOT PARTICIPATING.

. Specifically, TJ’s and Holder appeal the circuit court’s denial of their motion for a judgment notwithstanding the verdict, which sought a judgment as a matter of law with respect to Jefcoat’s liability for repayment of the loans.